# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA
        Plaintiff,

  v.                                                      Case No. 09-CR-20

**LEWIS JUDKINS**
        Defendant.

## SENTENCING MEMORANDUM

Defendant Lewis Judkins pleaded guilty to conspiring to possess with intent to distribute and to distribute 5 kilograms or more of cocaine and 50 grams or more of crack cocaine, contrary to 21 U.S.C. §§ 841(a)(1), (b)(1)(A) & 846. I ordered a pre-sentence report ("PSR") and set the case for sentencing.

In imposing sentence, the district court must first calculate the advisory sentencing guideline range, resolving any factual disputes necessary to that determination, then select the actual sentence on consideration of all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008). This memorandum sets forth written reasons for my sentencing determinations.

### I. GUIDELINES

Defendant's PSR set a base offense level of 34 under U.S.S.G. § 2D1.1(c)(3) based on drug weight, then added enhancements of 2 levels under § 2D1.1(b)(1) based on a co-conspirator's firearm possession, and 4 levels based on defendant's aggravated role in the offense under U.S.S.G. § 3B1.1(a). Based on defendant's timely guilty plea, the report deducted 3 levels for acceptance of responsibility, § 3E1.1, for a final level of 37. The PSR

then calculated a criminal history category of III based a criminal history score of 6 – 1 point under U.S.S.G. § 4A1.1(c) for a 1998 cocaine possession case (sentence: 2 years probation); 3 points under U.S.S.G. § 4A1.1(a) for a 2000 second degree sexual assault of a child (sentence: 4 years prison) and burglary (sentence: 8 years imposed and stayed for 10 years probation) case; and 2 points under U.S.S.G. § 4A1.1(d) because defendant committed the instant offense between May 2006 and December 2008, while on probation in the 2000 burglary case.[1]

Defendant objected to various statements and guideline calculations in the PSR. Aside from one, I found that his objections lacked merit.

## A. Corey Smith's Involvement

Defendant first objected to the inclusion of any incriminating statements relating to his brother and co-defendant, Corey Smith. Defendant noted that Smith's guilt had not been proven, and that his case was set for trial. I saw no basis for excluding otherwise reliable information simply because Smith's case had not yet been resolved. Nor did the fact that information about Smith was not included in defendant's plea agreement mean that I could not consider it. See 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); United States v. Tockes, 530 F.3d 628, 633 (7th Cir. 2008) (noting that the sentencing court may appropriately conduct an inquiry broad in scope, largely unlimited either

---

[1] Defendant's probation in the 2000 case was revoked based on the instant offense, resulting in activation of the 8 year stayed prison sentence, which he was serving when he appeared before me for sentencing.

2

as to the kind of information it may consider or the source from which it might come, including reliable evidence of wrongdoing for which the defendant has not been convicted). Finally, as to the specific information set forth in PSR ¶ 21 (pertaining to a controlled buy with which Smith was involved), the circumstances surrounding that transaction were corroborated by various means, including recorded calls.

**B.     Firearm Enhancement**

Defendant next objected to the 2 level firearm enhancement under § 2D1.1(b)(1). The government agreed not to seek this enhancement, and based on this agreement and the lack of specific evidence that the co-conspirator, Katherine Howard, possessed the firearm in furtherance of her and defendant's jointly undertaken criminal activity, see U.S.S.G. § 1B1.3(a)(1)(B), I declined to impose it.

**C.     Drug Weight**

Defendant conceded that the drug weight properly attributable to him exceeded 5 kilograms of cocaine, but he objected to the PSR's estimate of 15-50 kilograms, producing the base level of 34. Specifically, he argued that the statements made by co-defendant Sarah Hawver, upon which the PSR's figure was primarily based, were not accurate and were better characterized as a summary of the investigator's estimate of drug quantities attributable to the conspiracy. Defendant stressed his due process right to be sentenced based on accurate information and noted that the information in his PSR was hearsay.

In calculating a guideline range, "the stringent rules governing admission of evidence in a criminal trial are not applicable." United States v. Maiden, No. 09-3747, 2010 WL 1948340, at *1 (7th Cir. May 17, 2010) (citing United States v. Johnson, 489 F.3d 794, 796

3

(7th Cir. 2007)). While a defendant has a due process right to have his sentence based upon accurate information, "hearsay statements are often an integral part of the sentencing process." Id. (internal quote marks and citation omitted). "In fact, there are few limitations on the types of evidence a sentencing judge may consider, as long as it has sufficient indicia of reliability to support its probable accuracy." Id. (internal quote marks and citation omitted).

In this case, the PSR and the addendum contained a detailed analysis of drug weight. The addendum in particular went through Hawver's statements in detail to come up with a conservative drug weight of over 19 kilograms of cocaine, sufficient to create a base level of 34. In making these statements, Hawver spoke against her penal interest, see United States v. Harper, 281 Fed. Appx. 608, 611 (7th Cir. 2008) ("Statements against penal interest are presumptively reliable, . . . and a court can find sentencing facts against a defendant based on statements against penal interest made by others."), and her information was generally consistent with the statements of other cooperators and other evidence in the case, which included recorded calls and controlled buys. I therefore found her information sufficiently reliable.

The Seventh Circuit has long held that district courts may rely on information contained in a PSR so long as it is well-supported and appears reliable. See, e.g., United States v. Moreno-Padilla, 602 F.3d 802, 808-09 (7th Cir. 2010) (citing United States v. Heckel, 570 F.3d 791, 795 (7th Cir. 2009); United States v. Salinas, 365 F.3d 582, 587 (7th Cir. 2004); United States v. Mustread, 42 F.3d 1097, 1101-02 (7th Cir.1994)). And when the court relies on a PSR, it is the defendant's task to show that the facts contained in the report are inaccurate. He must produce some evidence that calls the reliability or correctness of the alleged facts into question; a bare denial will not suffice. See Mustread, 42 F.3d at 1101-02. Only if the

4

defendant's objection creates real doubt as to the reliability of the information in the PSR does the government have the burden of independently demonstrating the accuracy of the information. See Moreno-Padilla, 602 F.3d at 809.

Here, the PSR and addendum contained detailed, supported information, and aside from criticizing it as hearsay, defendant offered no more than a denial. See Maiden, 2010 WL 1948340, at *2 ("Maiden has not created any doubt about the teller's statement because, other than generically criticizing it as hearsay, he offers no evidence that would lead us to question the teller's reliability."). He provided no reason to doubt Hawver's statements, which, as noted above, were consistent with the statements of other cooperators and the other evidence of record.

The court may use a reasonable estimate of drug quantities, see United States v. Alviar, 573 F.3d 526, 546 (7th Cir. 2009), cert. denied, 130 S. Ct. 1312 (2010), and I found the amount set forth in the PSR and addendum a reasonable estimate, if anything conservative. Therefore, I overruled the objection.

**D.     Aggravated Role**

Next, defendant objected to the 4 level aggravated role enhancement under U.S.S.G. § 3B1.1(a). That guideline provides:

> Based on the defendant's role in the offense, increase the offense level as follows:
>
> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
>
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
>
> (c) If the defendant was an organizer, leader, manager, or supervisor in any

5

criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1.

Here, defendant stipulated that he directed Sarah Hawver, Misty Dolgner and Katherine Howard, and thus qualified for a 2 level enhancement under sub. (c), but he denied that the criminal activity involved five or more participants or was otherwise extensive, as is necessary for the four level increase. Specifically, defendant objected to Corey Smith's involvement, as he had not yet been convicted, and to the vague references in the PSR to un-named out-of-state suppliers and other participating informants or defendants charged in state court.

The objection failed. First, defendant seemed to assume that he had to direct or lead five or more participants, but that is not the law. The guideline requires only that the defendant controlled at least one other member of the criminal enterprise, and that the enterprise involved five or more. U.S.S.G. § 3B1.1 cmt. n.2 ("To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants."); United States v. Gallardo, 497 F.3d 727, 739 (7th Cir. 2007) ("The Guidelines only require that the defendant controlled one other member of the criminal enterprise."); United States v. Blaylock, 413 F.3d 616, 621 (7th Cir. 2005) ("All that is required is that the defendant provide leadership and organization for a criminal enterprise comprised of five or more persons and actually control at least one of the participants.").

Second, as to the objection to Smith's inclusion, the application notes explain that a "participant" is a person who is criminally responsible for the commission of the offense, but need not have been convicted. U.S.S.G. § 3B1.1 cmt. n.1. The evidence set forth in the PSR, the accuracy of which defendant did not seriously contest, demonstrated Smith's involvement by a preponderance of the evidence for the purposes of this enhancement. Specifically, Smith

6

made drug deliveries at defendant's direction, as explained in ¶ 21 of the PSR and the addendum. With Smith's inclusion, the PSR identified five participants – Hawver, Dolgner, Howard, Smith and defendant. (Defendant counted as one of the five. See, e.g., United States v. Lopez, 281 Fed. Appx. 964, 966 (11th Cir. 2008); United States v. Si Lu Tian, 339 F.3d 143, 156 (2d Cir. 2003); United States v. Schweihs, 971 F.2d 1302, 1318 (7th Cir. 1992); United States v. Preakos, 907 F.2d 7, 10 (1st Cir. 1990)). In any event, the PSR and the addendum identified other participants too, including "Gabe," who helped pick up drugs, and "Big Moe" and "Hollywood," who supplied drugs to defendant's organization; and the Seventh Circuit has held that identification of the full names of all participants is not always necessary. See United States v. Mansoori, 304 F.3d 635, 668-69 (7th Cir. 2002).

Finally, although he essentially conceded the point, the record clearly demonstrated that defendant organized and lead this criminal enterprise. He arranged the transactions with out-of-state suppliers, and directed his underlings to pick-up the drugs, store them, make deliveries, and count money. I therefore overruled this objection.

**E.  Criminal History Objections**

Finally, defendant argued that, contrary to the information in the PSR, he was just seventeen years old when arrested in the 1998 cocaine possession case. He therefore argued for application of the 5 year rather than the 10 year look-back period for criminal history points. Compare U.S.S.G. § 4A1.2(d) (generally providing for a 5-year window for offenses committed prior to age eighteen), with U.S.S.G. § 4A1.2(e) (generally providing for a 10-year window for adult convictions). However, defendant provided no evidence supporting his claim, while the PSR addendum indicated the source of the information about the arrest (court records), which appeared reliable. In any event, even if I excluded this 1 criminal history point, defendant still

7

fell in category III. Thus, while I overruled the objection based on the lack of evidence supporting it, I noted that this did not affect the guidelines and would not affect the sentence.

Defendant also objected to one of the arrests listed in the PSR, indicating that it pertained to his father, not him. This objection did not affect the guidelines or the sentence so I did not resolve it under Fed. R. Crim. P. 32(i)(3)(B).

**F.      Final Guideline Range**

Based on the above findings, I adopted an offense level of 35, criminal history category of III, and imprisonment range of 210 to 262 months. I turned then to imposition of sentence under 18 U.S.C. § 3553(a).

## II. SENTENCE

**A.      Section 3553(a) Factors**

Section 3553(a) directs the district court to consider the following factors in imposing sentence:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the advisory guideline range;

8

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing set forth in sub-section (a)(2) – just punishment, deterrence, protection of the public and rehabilitation of the defendant. The court should give respectful consideration to the guidelines in making this determination, Gall v. United States, 552 U.S. 38, 46 (2007), but it may not presume that the guideline sentence is the correct one, Rita v. United States, 551 U.S. 338, 351 (2007). Rather, the court must make an individualized assessment based on all of the § 3553(a) factors, keeping in mind that the parsimony provision quoted above represents the "overarching" command of the statute, see Kimbrough v. United States, 552 U.S. 85, 101 (2007), then adequately explain the chosen sentence, see Gall, 552 U.S. at 49-50; see also United States v. Kirkpatrick, 589 F.3d 414, 415-16 (7th Cir. 2009) ("The Guidelines are no longer binding, so a judge need not explain why a sentence differs from the Sentencing Commission's recommendation. See United States v. Bartlett, 567 F.3d 901, 909 (7th Cir.2009). It is enough to explain why the sentence is appropriate under the statutory criteria.").

**B. Analysis**

**1. The Offense**

Defendant conspired with others to obtain cocaine from Chicago and distribute it throughout the Sheboygan County, Wisconsin area. He relied on others, including co-

9

defendants Misty Dolgner, Sarah Hawver and Corey Smith, to do much of the work, including traveling to Chicago to pick up the drugs. Once the cocaine arrived, defendant and those working at his direction distributed it to others. In an effort to avoid connecting his assets to drug trafficking, defendant often relied on others to transport and hold money. He also relied on others, mostly women, to hold his cocaine once it was brought to Sheboygan.

One cooperator, designated CI-3 in the PSR, indicated that s/he traveled to Chicago about fifteen times between May and November 2007, obtaining 9 to 36 ounces of cocaine each time from defendant's suppliers, then transporting it back to Sheboygan. CI-3 met three different suppliers.

On November 28, 2007, agents executed a warrant at defendant's "safe-house" in Howard's Grove, Wisconsin, seizing 164 grams of cocaine and a firearm belonging to the tenant, Katherine Howard. Between March and October 2008, agents tracked Dolgner's car by GPS unit, learning that it made numerous trips to Chicago. Agents also got a wiretap for defendant's phone, which captured drug-related calls between defendant, Dolgner and Smith.

In July 2008, a cooperating defendant, who indicated that s/he purchased 2.8 gram to 4.5 ounce quantities from defendant's organization from 2003 or 2004 through July 2008, made a controlled buy of 29.1 grams of cocaine from defendant and Hawver. As on previous occasions, Hawver acted as defendant's runner. The PSR detailed additional purchases of one ounce on July 28, 2008 and two ounces on July 31, 2008. This cooperator also bought two ounces on December 2, 2008, which was delivered by Corey Smith.

As discussed above, in a post-arrest statement, Hawver estimated that she transported about 19 kg of cocaine for defendant between December 2007 and August or September 2008. Given all of this evidence, the drug weight figure in the PSR was likely a conservative one.

10

**2.    The Defendant**

Defendant was thirty years old, with a prior record for cocaine possession in 1998, and second degree sexual assault of a child and burglary in 2000. A state court judge sentenced him to 4 years in prison for the assault case, and 8 years prison stayed for 10 years probation on the burglary; that supervision was revoked in April 2009 and the 8 year stayed prison term activated. The revocation was based on the instant offense, but defendant's adjustment was marginal even before this case arose. He was also convicted of a domestic violence-disorderly conduct in 2004 arising out of an altercation with the mother of one of his children.

Defendant had six children with four different women and owed substantial back child support. Defendant noted that the arrears got worse after the court detained him in this case, but he was held in contempt of court for failure to pay back in 2004, long before his detention. One of the mothers made positive statements about defendant to the PSR writer, indicating that he was a good person and committed father. But, I noted that she was the victim in the 2004 DV-DC case.

Defendant earned an HSED after withdrawing from school, but his work record was quite limited, consisting mostly of short-term jobs. Defendant admitted past use of marijuana, but he did not appear to have a serious substance abuse problem. I saw no significant correctional treatment needs, aside from vocational training and perhaps drug counseling.

**3.    The Guidelines and Purposes of Sentencing**

The guidelines called for a term of 210-262 months, and I agreed that a substantial prison sentence was necessary here. Cocaine trafficking is a serious crime, and defendant operated at a high level, directing others. Based on the cash seized around the time of

11

defendant's arrest, including $20,000 from a safe deposit box, as well as the statements from CI-3 about counting $39,000 in proceeds, it also appeared that defendant profited handsomely.

Defendant's prior record was not extensive, but the 2000 case was very serious. He also had a poor track record on supervision in the community, and his involvement in the instant offense covered a significant period of time. Therefore, significant prison was needed to protect the public and deter.

Defendant sent the court a letter prior to sentencing, in which he tried to cast blame on Dolgner and to a lesser extent on Hawver, which seemed rather remarkable given the evidence in the record. I found that these and other statements in the letter about wanting to go to trial and the "ghost dope law that the feds have" cast some doubt on the sincerity of his acceptance of responsibility. I did consider defendant's family support as a factor in his favor. I also considered the efforts he made to be involved in his children's lives.

Defendant requested a sentence of 120 months, the mandatory minimum required by statute, while the government advocated a sentence at the low end of the guideline range. Given his prior record, the aggravating circumstances in this case, and his marginal acceptance of responsibility, I found defendant's recommendation of the minimum insufficient. Rather, under all the circumstances, I found a sentence of 180 months sufficient but not greater than necessary to satisfy the purposes of sentencing. This sentence adequately accounted for the positive factors in defendant's character and background discussed above. The sentence was based on § 3553(a) and would have been the same regardless of my findings on the disputed guideline issues. See United States v. Sanner, 565 F.3d 400, 406 (7th Cir. 2009). The sentence varied modestly from the guideline range, less than 2 levels, and because it was based on the particular facts of the case discussed it created no unwarranted disparity.

12

Consistent with the joint recommendation of the parties, I ran the instant sentence concurrently with the balance of defendant's 8 year state sentence after revocation. While the guidelines recommend a consecutive term when the undischarged sentence is based on a revocation, see U.S.S.G. § 5G1.3 cmt. n.3(C), the Seventh Circuit has acknowledged that a concurrent term is reasonable where, as here, the revocation is based on the instant offense conduct, see United States v. Huusko, 275 F.3d 600, 603 (7th Cir. 2001). Given the length of the instant sentence, and the timing, this provided a significant additional punishment, sufficient to satisfy the factors set forth in 18 U.S.C. § 3584 and U.S.S.G. § 5G1.3 cmt. n.3(A).[2]

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 180 months, running concurrent with the sentence in State of Wisconsin Case No. 99-CF-512, followed by 5 years of supervised release. As conditions of supervision, I ordered him to comply with drug testing and treatment, repay the buy money expended in this investigation, and attend to his child support obligations. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 27th day of May, 2010.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[2] Running the sentence concurrently responded to defendant's argument as to the effect of defendant's 2000 convictions, which produced 5 of his 6 criminal history points and the 8 year revocation sentence. Any overstatement resulting from the 2000 convictions was more than adequately addressed by running the instant sentence concurrently.

13